IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KATHRYN IRENE KRAFTHEFER,**

    **Plaintiff,**

    v.

                                  **Civil Action 2:14-cv-190**
                                  **Judge Michael H. Watson**
                                  **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**REPORT AND RECOMMENDATION**

    Plaintiff, Kathryn Irene Krafthefer, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 9).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

                                  **I.**      **BACKGROUND**

    Plaintiff, Kathryn Irene Krafthefer, filed her application for Disability Insurance Benefits and Supplemental Security Income on February 14, 2011.  (R. at 190.)  Plaintiff initially alleged a disability onset date of February 3, 2008, but amended her onset date to January 1, 2010, to coincide with her fiftieth birthday.  (R. at 31, 190, 214).  Plaintiff's application was denied

initially and upon reconsideration. (R. at 124, 127.) Plaintiff sought a *de novo* hearing before an administrative law judge.

Administrative Law L. Raquel Baily Smith ("ALJ") held a hearing on August 28, 2012, at which Plaintiff, represented by counsel, appeared and testified. (R. at 28-55.) Ms. Ward, a vocational expert, also appeared and testified at the hearing. (R. at 47-53.) On October 15, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 11-22.) On December 9, 2013, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-3.) Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff asserts that the ALJ failed to sufficiently account for her moderate limitations in concentration, persistence, or pace. Plaintiff also posits that the ALJ erroneously failed to properly consider her illiteracy.

## II. RELEVANT RECORD EVIDENCE[1]

Plaintiff's school records reflect that she completed eighth grade before dropping out. (R. at 219-22.) Plaintiff attended special education classes, and as of her fifteenth birthday, was reading between a third and fourth grade level. (*Id*.) Charles Bade completed a function report for Plaintiff. (R. at 252-260.) On this report, Plaintiff reported that she uses glasses when she tries to read and that she does not "understand most of what [she] read[s]." (R. at 258-59.) On a symptoms report, Plaintiff reported that she "can not read very well." (R. at 267.)

---

[1]The Undersigned limits discussion to evidence bearing on the two contentions of error Plaintiff raises in her Statement of Errors. (ECF No. 12.)

In May 2011, Plaintiff underwent a psychological evaluation with Janice Peterson, Ph.D. (R. at 372-76.) Plaintiff reported that she has a great marriage with her husband, who was on disability benefits. She indicated that she completed the eighth grade, but that she dropped out when she became pregnant. She also stated that she attended special education classes throughout her schooling. Plaintiff reported that she attempted to obtain her GED, but was unsuccessful. Plaintiff also reported that she was disabled due to her back problems, her problems understanding, and her inability to read or write. (R. at 372.) Plaintiff indicated that she had "some difficulty with understanding and following instructions due to poor reading and writing" but that she was "able to effectively communicate and . . . knew what was expected of her in her job." (R. at 373.) She rated her academic abilities as "fair." (R. at 374.) She reported that she "is able to manage money, count change, and pay bills." (R. at 375.) Plaintiff indicated that she could care for her own personal needs, prepare meals for her family, feed her dogs and cats, and complete household chores (sweeping, mopping, laundry, dishes). She stated that she enjoyed television shows, word puzzles, and social activities (cookouts, carnivals, meeting for coffee). (R. at 374.)

Dr. Peterson observed that Plaintiff had a euthymic mood and intact insight and noted other insignificant mental status findings. Dr. Peterson assessed Plaintiff's short-term memory as average, her word knowledge and understanding of verbal concepts as below average, and noted that her "ability to concentrate during testing was poor," but "she was able to maintain adequate persistence and pace on task completion." (R at 375.) Within her functional assessment, Dr. Peterson stated that Plaintiff "has difficulty reading and writing" and added that Plaintiff's "reported ability to comprehend is impaired and this was evident during today's

evaluation." (R. at 375.) She again noted that Plaintiff "persevered on tasks and worked at an average pace." (*Id.*)

State-agency reviewing psychologist Vicki Warren, Ph.D., found in connection with her Listings evaluation that Plaintiff had mild limitations in activities of daily living and social functioning and moderate difficulties in concentration, persistence, or pace. She also rated Plaintiff as moderately limited in her ability to carry out detailed instructions; her ability to maintain attention and concentration for extended periods; and her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 90-91.) She ultimately opined that Plaintiff retained the residual capacity to perform simple, routine tasks "where changes can be easily explained and where interaction [with] coworkers is superficial." (R. at 91.) Dr. Warren also stated that Plaintiff's "statements regarding difficulties reading and writing appear credible." (R. at 88.)

At the administrative hearing, Plaintiff testified that she lived with her husband, who is disabled. She indicated that in a typical day, she cleans her house, including washing dishes, sweeping, and laundry. She goes to the grocery store three or four times per week. Plaintiff testified that she is disabled due to pain in her back and legs, her high blood pressure, and her anxiety. She indicated that she completed the eighth grade and can read and write and do simple math. On cross examination, Plaintiff elaborated that she can add and "read a little bit like cat, dog, book, like that" and that she could "read just a little," but that she does not understand what she is reading. (R. at 41.) Plaintiff's counsel pointed out that her school records reflected that she was reading between a third and fourth grade level when she stopped her schooling. Plaintiff

indicated that she is still reading between a third and fourth grade level.  Plaintiff testified that she has not obtained her driver's license because she is "afraid" that she would have an accident. (R. at 41-42.)

The VE testified that Plaintiff had past relevant employment as a housekeeper, performed at the unskilled, medium level.  The ALJ proposed a series hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE.  When the ALJ presented a hypothetical question to the VE premised upon the RFC she ultimately found, the VE testified that the hypothetical individual would be unable to perform Plaintiff's past work.  The VE further testified that the individual could perform work that exists in significant numbers in the national and regional economy.  Upon cross-examination, the VE indicated that the jobs identified would require "very minimal reading and writing," explaining that there might be a diagram.  (R. at 52.) The VE added that the jobs at issue would not require any more reading than was required in Plaintiff's past relevant work.  (R. at 53.)

The ALJ next modified the hypothetical to limit the individual to light work with the same limitations.  The VE testified that the individual could perform work that exists in significant numbers in the national and regional economy, including the positions of non-postal mail clerk, shipping/packing clerk, and convenience store cashier.

Finally, the ALJ asked whether the hypothetical individual would be employable if she was off task greater than twenty percent of the workday.  The VE responded that such an individual could not sustain gainful activity.

## IV. THE ADMINISTRATIVE DECISION

At step one of the sequential evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since alleged onset date of February 3, 2008, the original alleged onset date of disability.  At step two, the ALJ found that Plaintiff had the following severe impairments during the relevant period: hypertension, degenerative joint disease, degenerative disc disease of the lumbar spine, and anxiety.  The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 14.)  In discussing the Part B Listing Criteria, the ALJ made the following finding:

> With regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.  At the hearing, [Plaintiff] testified that she completed the 8th grade.  She stated that she can read, write and do simple math, although her representative claimed she was functionally illiterate . . . .  [Plaintiff] stated that she has difficulty understanding what she reads . . . .  In her "Function Report," [Plaintiff] stated that

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

6

> she had problems understanding and remembering instructions. [S]he reported handling changes in routine "pretty well," however . . . .

(R. at 15 (internal citations to the record omitted).)

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] can frequently stoop; occasionally balance, stoop, kneel, crouch and crawl, and climb ramps and stairs; never climb ladders, ropes or scaffolds; [Plaintiff] can understand, remember and carry out unskilled simple and repetitive tasks where changes can be easily explained and where interaction with coworkers and the general public is superficial.

(R. at 15). In formulating this RFC, the ALJ found Plaintiff's allegations concerning both her mental and physical impairments to be less than credible. The ALJ also determined that Plaintiff "has a limited education and is able to communicate in English." (R. at 20.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the state and national economy. The ALJ addressed Plaintiff's alleged illiteracy as it related to the RFC finding as follows:

> [Plaintiff's] representative argued that [Plaintiff] was functionally illiterate. The vocational expert testified, however, that the above jobs were learned mainly by demonstration and would have very minimal reading and writing required. The vocational expert testified that [Plaintiff] may have to look at a diagram for the assembler jobs, but there would be practically no reading with the cafeteria attendant job. Accordingly, the undersigned finds that [Plaintiff] could perform the above jobs.

(R. at 21.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

In her Statement of Errors, Plaintiff advances two contentions off error. Plaintiff first asserts that the ALJ erred in crafting an RFC that fails to accommodate her moderate limitations

in concentration, persistence, or pace.  Plaintiff next submits that the ALJ erroneously failed to properly consider her illiteracy.  The Undersigned considers Plaintiff's contentions of error in turn.

**A.    The ALJ's RFC Determination**

Within this contention of error, Plaintiff relies upon *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), to argue that the ALJ's RFC failed to account for the moderate limitations in concentration, persistence, or pace that the ALJ found at step three of the sequential analysis.  Plaintiff contends that *Ealy* stands for the proposition that limiting a claimant to simple, repetitive tasks and instructions does not properly account for a claimant's moderate limitations in concentration, persistence, or pace.  (Pl.'s Statement of Error 7, ECF No. 12.)  It appears that Plaintiff maintains that the ALJ should have also limited her to performing tasks in an environment without fast-paced production demands.  The Undersigned finds this contention of error to be without merit.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).

Here, the Undersigned finds that substantial evidence demonstrates that the ALJ's RFC adequately accounted for all of the limitations she found credible.  The ALJ concluded within her RFC determination that Plaintiff could "understand, remember and carry out unskilled simple and repetitive tasks where changes can be easily explained and where interaction with coworkers and the general public is superficial."  (R. at 15.)  Contrary to Plaintiff's assertion, the ALJ's

decision does not reflect that the ALJ credited evidence that would support a finding that Plaintiff had pace limitations on her ability to perform unskilled, simple, and repetitive tasks. Significantly, the ALJ's RFC finding parrots the RFC finding of reviewing physician Dr. Warren, who the ALJ accorded "great weight." (R. at 19.) Dr. Warren rated Plaintiff as moderately limited in her ability to maintain attention and concentration for extended periods and her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 90-91.) Dr. Warren concluded that the RFC that the ALJ adopted accommodated all of these limitations. Moreover, in support of the RFC, the ALJ also relied upon and assigned "great weight" to the opinion of consultative examiner Dr. Peterson, who found that Plaintiff had difficulty with concentration and complex instructions, but that she could maintain adequate "pace on task completion" and that she "worked at an average pace." (R. at 19, 375.) In light of the foregoing, the Undersigned concludes that the limitations the ALJ incorporated into the RFC adequately addressed the moderate limitations in concentration, persistence, or pace that she and the medical sources found.

*Ealy*, the case upon which Plaintiff relies, is distinguishable. On this point, *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426 (6th Cir. 2014), is instructive. The *Smith-Johnson* Court analyzed the very same argument Plaintiff advances here as follows:

> Smith–Johnson's first challenge concerns her concentration, persistence, or pace. She relies on *Ealy*, 594 F.3d 504, to support her argument that more specific limitations should have been included in the hypothetical to the VE. Yet, *Ealy* is distinguishable from this case. In *Ealy*, the claimant's doctor limited him to "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical." *Ealy*, 594 F.3d at 516. In that RFC assessment, however, the ALJ included only a limitation to "simple repetitive tasks and instructions in nonpublic work settings." *Id*. That RFC finding was included in the hypothetical to the VE.

> *Id*. This court held that the RFC assessment and the hypothetical did not adequately reflect the claimant's limitations because it truncated the doctor's specific restrictions. *Id*.
>
> Here, the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability "to maintain attention and concentration for extended periods." Unlike in *Ealy*, Dr. Kriauciunas did not place any concrete functional limitations on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks. Instead, Dr. Kriauciunas plainly determined that Smith–Johnson could perform simple tasks on a "sustained basis," even considering her moderate limitations in maintaining concentration and persistence for "extended periods." In other words, the limitation to simple tasks portrays the tasks that she can perform without being affected by her moderate limitations. The ALJ thus did not fail to include a restriction on her ability to maintain concentration, persistence, or pace while performing simple tasks, and he further reduced the required attention and concentration by restricting her to routine and repetitive tasks.

579 F. App'x at 436–37. Here, Drs. Warren and Peterson, like Dr. Kriauciumas in *Smith-Johnson*, did not place functional limitations on Plaintiff's ability to maintain pace when performing simple, repetitive, or routine tasks. Indeed, as noted above, Dr. Peterson explicitly noted that Plaintiff worked at an adequate/average pace. Given that the ALJ did not find that Plaintiff had non-exertional limitations greater than those set forth by Drs. Warren and Peterson, *Ealy* does not undermine the Undersigned's conclusion that substantial evidence supports the ALJ's RFC determination. Accordingly, Plaintiff's first contention of error lacks merit.

**B.     The ALJ's Finding that Plaintiff has a Limited Education**

Within this contention of error, Plaintiff alleges that the ALJ failed to properly consider her illiteracy. Plaintiff points out that given her age and the RFC's limitation to light work, if she is determined to be illiterate as contemplated in the Medical-Vocational Guidelines, she would be considered disabled per Medical-Vocational Rule 202.09. Defendant counters that

substantial evidence supports the ALJ's determination.  Moreover, Defendant emphasizes that even Plaintiff's counsel initially argued that she had a limited education.

Grid Rule 202.09 directs a disability finding for an individual who has the residual functional capacity for light work, an unskilled work history, is illiterate or unable to communicate in English, and is approaching advanced age.  20 C.F.R. § 404.1520(a)(4)(i)-(v).  The regulations set forth descriptions of various education categories to assist the Commissioner in evaluating a claimant's educational level.  20 C.F.R. § 416.964(b)(1)-(6).  The regulations define "illiteracy," "marginal education," and "limited education" as follows:

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
>
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. § 416.964(b)(1)-(3).  The regulations further advise as follows:

> [T]he numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education.

20 C.F.R. § 416.964(b).  Finally, the regulations describe the concept of "education" as follows:

12

> Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability. However, if you do not have formal schooling, this does not necessarily mean that you are uneducated or lack these abilities. Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education. Your daily activities, hobbies, or the results of testing may also show that you have significant intellectual ability that can be used to work.

20 C.F.R. § 416.964(a).

In instant case, because Plaintiff satisfies the other factors set forth in Grid Rule 202.09, the dispute centers on Plaintiff's education level. More specifically, Plaintiff's disability status turns on whether she is illiterate as contemplated under the regulations. Thus, although Plaintiff frames the issue as whether the ALJ erred in determining that she had a limited education, the proper inquiry is whether the ALJ erred in failing to find her to be illiterate. Put another way, any distinction between marginal education and limited education is insignificant, as a finding of marginal education would not affect the outcome of the case. *Cf. Caudill*, 424 F. App'x at 514 (characterizing the issue on appeal as "whether the ALJ should have found [the claimant] to be 'illiterate'" where the claimant challenged the ALJ's determination that the claimant had a limited education).

The Court finds that substantial evidence supports the ALJ's determination that Plaintiff was not illiterate as contemplated under the regulations. As the ALJ pointed out in her decision, during her hearing testimony, Plaintiff "stated that she can read, write and do simple math." (R. at 15 (referencing Plaintiff's hearing testimony).) Consistently, Plaintiff reported to Dr. Peterson that she "is able to manage money, count change, and pay bills," (R. at 375). *See Johnson v. Comm'r of Soc. Sec.*, 97 F. App'x 539, 541 (6th Cir. 2004) (relying on the regulations' definition of "education" to conclude that substantial evidence supported the ALJ's determination that the

claimant was not illiterate where even though the claimant "testified that he could not read or write, he does have a sixth grade education, is able to add and subtract, and purchase items and make proper change"). Plaintiff also reported to Dr. Peterson that she enjoyed word puzzles and was "able to effectively communicate and . . . knew what was expected of her in her job." (R. at 374-73). *See* 20 C.F.R. § 416.964(a) (explaining that education serves as a proxy for ability to meet vocational requirements such as communication skills and that other evidence can demonstrate these abilities even where the claimant does not have a formal education). The ALJ also acknowledged that Plaintiff "dropped out of school in the 8th grade" and that "she was in special education classes." (R. at 18.) Plaintiff testified that she continues to read between a third and fourth grade level (R. at 41-42), which was the grade level read when she was tested in the eighth grade, (R. at 219-22). *See Deaton v. Comm'r of Soc. Sec.*, 315 F. App'x 595, 596, 600–01 (6th Cir. 2009) (concluding that the "record [did] not support a conclusion that [the claimant was] illiterate" where the claimant had completed the eighth grade, had never received a GED, and had "indicated that she [could] read and write (albeit at a third grade level)"). In addition, the ALJ assigned "great weight," (R. at 19), to the opinion of state-agency medical consultant Dr. Vicki Warren, who opined that Plaintiff was capable of simple and routine tasks where changes can be easily explained and where interaction with co-workers is superficial, and ultimately incorporated this finding into the RFC, (R. at 15). This RFC finding further supports the ALJ's determination that Plaintiff is not illiterate. *See* 20 C.F.R. § 416.964(b)(2) ("Marginal education means ability [to perform] skills which are needed to do simple, unskilled types of jobs."); *Caudill*, 424 F. App'x at 514–16 (holding that substantial evidence "clearly" supported the ALJ's determination that the claimant had a limited education and was not illiterate where

14

the record reflected that the claimant had a second-grade reading level and a developmental reading disorder, but could read and write a grocery list; had worked for many years; and a medical source had opined that the claimant had a fair ability to understand, retain, and follow instructions); *Fox v. Comm'r of Soc. Sec.*, No. 2:12-cv-635, 2013 WL 3965293, at *17–18 (S.D. Ohio July 31, 2013) (noting that the medical sources' opinions and the ALJ's determination that the claimant was "capable of performing simple tasks and engaging in social functioning" was "consistent with a marginal education"). Finally, the ALJ found that Plaintiff was not fully credible with regard to her allegations of physical- and mental-health symptoms, (R. at 16-18). *See Caudill*, 424 F. App'x at 516 (noting that the ALJ's finding that the claimant was "less-than-credible" with regard to his symptoms "provides further evidence supporting the ALJ's finding of 'limited education' as opposed to 'illiterate'").

In sum, the Undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff is not illiterate as contemplated under Grid Rule 202.09. Thus, even though the ALJ's findings and the record evidence suggest that a determination of "marginal education" rather than "limited education" may have been more appropriate, the Undersigned finds that any such error would be harmless as it would not affect the outcome. The Undersigned also rejects Plaintiff's contention that the ALJ "utterly failed to evaluate [P]laintiff's literacy" so as to "prevent[] meaningful judicial review." (Pl.'s Statement of Errors 10, ECF No. 1.) Notably, twice within her decision, the ALJ acknowledged Plaintiff's counsel's contention that Plaintiff was functionally illiterate, as well as record evidence that could support such a contention. (*See* R. at 15, 21 (contrasting Plaintiff's counsel's claim of illiteracy with Plaintiff's testimony that should could read, write, and do simple math; acknowledging Plaintiff's testimony that "she has

15

difficulty understanding what she reads"; and noting that Plaintiff self-reported "problems understanding and remember instructions" on her Function Report).) And although the ALJ did not set forth her reasoning for her limited-education determination immediately below the lines in the decision reflecting her determination, the record evidence she discussed, together with her findings (such as her RFC and credibility findings), allow for meaningful review. Accordingly, the Undersigned finds Plaintiff's second contention of error to be without merit.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII. PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**


Date: February 19, 2015                     /s/ *Elizabeth A. Preston Deavers*
                                            Elizabeth A. Preston Deavers
                                            United States Magistrate Judge